## CHARLES F. DOE *v.* S. S. CULVERWELL *et al.*

Contracts—When Valid.—A contract, to be obligatory on either party to it, must be mutual and reciprocal.

Idem—Courts of Equity.—Courts of equity will not attempt to enforce vague and shadowy claims.

Idem.—C. purchased certain lots, and borrowed the purchase money from M., to whom, as security for the loan, C. caused a deed, in form absolute, to be made by the seller, upon the agreement that when payment should be made of the money loaned, and interest, together with certain additional advances made to C. by M., the latter should convey the lots to C. To discharge this indebtedness C. negotiated a loan of C. I. Co. of a sum sufficient to liquidate M.'s demands, and fifteen hundred dollars in addition, upon the agreements, which were fully

executed, that C. should pay M. and receive from him the promised conveyance, and simultaneously execute a mortgage of the lots to C. I. Co., to secure said last loan. Subsequently C. I. Co. assigned an unpaid balance of its demand, together with said mortgage, to plaintiff; who brought suit to foreclose and make K. a party defendant, to whom C. being indebted at the time of said purchase, and by reason thereof had promised K. to buy for her a lot and thereon build a house which should become her property. While said lots stood in M.'s name, C. pointed out to K. one of them as the one intended, built a house thereon, and K. went into possession, and so continued until said suit. There never was, however, any accounting between C. and K. at any time, or any price agreed or fixed on said lot. *Held*, that this transaction created no equitable title in K. which could have been enforced in a Court of equity as against C., if the title had been in him, and is void as a defense to plaintiff's said action.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*C. H. Parker*, for Appellants.

Upon the facts disclosed, Mrs. Knight (appellant) held the equitable title to the lot in her possession. (*Dutton* v. *Warschauer*, 21 Cal. 609; *Landers* v. *Bolton*, 26 Cal. 419; *Smith* v. *Yule*, 31 Cal. 180.)

*Crane & Boyd*, for Respondent.

Mrs. Knight would have had no standing in a Court of equity to enforce a contract for specific performance. If so, then she had no equity which the California Insurance Company were bound to recognize. (2 Story Eq. Jur., Sec. 764; *Morrison* v. *Rossignol*, 5 Cal. 64; *Minturn* v. *Baylis*, 33 Cal. 129; *Dillon* v. *Byrne*, 5 Cal. 455.)

By the Court, CROCKETT, J.:

There is little or no contest about the facts of this case, which are: that the defendant Culverwell purchased from the estate of Russ certain lots in San Francisco, and borrowed the money from one Meyer to pay for them, and as a security for the loan, it was agreed that the vendor should convey the

property by absolute deed to Meyer, to be by him conveyed to Culverwell on payment of the amount advanced, with interest. In accordance with this arrangement, the title was conveyed to Meyer by deed absolute, which was intended, however, to be only in the nature of a mortgage, and was treated by the parties as such. On the faith of this security, Meyer made further advances to Culverwell, so that on the 17th of February, 1866, there was due from Culverwell to Meyer, in the aggregate, the sum of seven thousand five hundred dollars. In order to discharge this indebtedness, Culverwell negotiated a loan from the California Insurance Company for nine thousand dollars, of which sum it was agreed that seven thousand five hundred dollars should be applied to extinguish the debt of Meyer, and that Meyer should then, simultaneously, convey the property to Culverwell, by deed, who should, at the same time, make a mortgage on it to the insurance company, to secure the payment of the nine thousand dollars, with interest. This agreement was carried into effect. The insurance company paid the debt due to Meyer, and advanced to Culverwell the further sum of one thousand five hundred dollars, and thereupon Meyer conveyed the property to Culverwell, who immediately made a mortgage on it to the insurance company, to secure the nine thousand dollars. Subsequently, Culverwell paid to the insurance company five thousand dollars, which was credited on the mortgage debt; after which the insurance company assigned the mortgage and balance due of the mortgage debt to the plaintiff Doe, who brings this action to foreclose the mortgage, making Knight and wife, amongst others, parties defendant. The defendants Knight and wife filed an answer and cross complaint, in which the wife sets up an alleged equity to one of the lots, founded on the following facts, to wit: That the wife of Culverwell and Mrs. Knight are sisters, and that in the years 1861 and 1862 Culverwell received from Germany certain moneys belonging to his wife and Mrs. Knight, which he used in his own business, with the consent of Mrs. Knight, on his promise to account to her

for her share of it; that on account of this indebtedness, he subsequently agreed, orally, to purchase a lot and build a house on it for her, and that the house and lot should be her property, but no price was ever agreed upon, nor was there any settlement or accounting between them; that when he purchased the lots from the Russ estate he pointed out one of them as the lot she was to have; and in the Summer of 1865, whilst the title stood in Meyer's name, erected a dwelling house upon it, consulting Mrs. Knight about the plan of the building; and on the completion of the house, in July, 1865, she and her husband entered into possession of it, and have ever since occupied it, with the consent of Culverwell, during all of which time she has claimed that the house and lot belonged to her.

On this state of facts, the District Court decided that Mrs. Knight had no equities superior to the plaintiff's, and entered judgment of foreclosure in the usual form, but with a provision that the remainder of the mortgaged premises be first sold, and that said house and lot be sold under the judgment only in the event that the remainder of the property proved to be insufficient to satisfy the mortgage debt, interest, and costs.

Knight and wife have appealed from this judgment, and insist, first, that Mrs. Knight has an equitable title to the house and lot which is superior to plaintiff's, and is entitled to priority over it: second, that at all events her equities are prior in respect to the one thousand five hundred dollars advanced by the insurance company to Culverwell, and that the five thousand dollars paid by him to the insurance company should be credited on the seven thousand five hundred dollars paid to Meyer, and not upon the entire nine thousand dollars due to the company.

Neither of these propositions is tenable. The transaction between Culverwell and Mrs. Knight created no equitable title in her to the house and lot which could have been enforced in a Court of equity, even as against Culverwell, supposing the title to have been in him. The transaction

amounted only to this: that Culverwell was indebted to Mrs. Knight, and in consideration thereof promised to purchase a lot and erect a house upon it for her, and that the property should be hers. There was no settlement of accounts between them, no agreement as to the price of the lot, no stipulation as to the cost and character of the building, nor, in fact, any of the elements of a contract of which a Court of equity could decree the specific performance. It was simply a vague understanding that he would purchase some kind of a lot and erect some sort of a house upon it for her. To be obligatory on either party, a contract must be mutual and reciprocal in its obligations. If Mrs. Knight, after entering into the occupation of the house and lot, had seen fit to abandon the possession, and had brought an action against Culverwell to recover the money due to her, the vague conversation which occurred between them in respect to the house and lot would have constituted no defense to the action; and if Culverwell had sued her to enforce a specific performance of the alleged contract, it would have been a sufficient answer for her to have said: "There is no contract; I never agreed to release you from the debt, nor to accept the house and lot in full payment, nor in payment of any specific sum; it was only a loose conversation, which assumed no definite shape, and was obligatory on neither of us."

It is unnecessary to cite authorities to show that Courts of equity do not attempt to enforce such vague and shadowy claims. But if valid against Culverwell, the claim of Mrs. Knight is obviously without foundation as against the plaintiff. The title was never in Culverwell, except subject to the mortgage to the insurance company. The deed from Meyer to Culverwell, and the mortgage from the latter to the insurance company, was one transaction. The title which he acquired by the deed, *eo instanti*, became subject to the mortgage. The money of the insurance company paid the debt to Meyer, and the company, by operation of law, as well as by the express agreement of the parties, became subrogated to the rights of Meyer, which were prior in time and superior

in equity to any alleged equity which Mrs. Knight could have derived from Culverwell.

It is claimed, however, that the equity founded on subrogation extended only to the seven thousand five hundred dollars paid to Meyer, and that the doctrine of subrogation can have no application to the additional one thousand five hundred dollars advanced by the insurance company to Culverwell. We have already shown that Mrs. Knight acquired no equity which she could enforce, even as against Culverwell, and it is useless to pursue the subject further. But we may add that we know of no principle of law or equity which forbids the application of the five thousand dollars paid by Culverwell first to the payment of the one thousand five hundred dollars, and the remainder as a credit on the balance of the mortgage debt.

Judgment affirmed.