MICHIGAN STONE & SUPPLY CO. et al. v. HARRIS et al.

(Circuit Court of Appeals, Sixth Circuit. July 6, 1897.)

No. 501.

1. CONTRACT FOR SALE OF BONDS—MUTUALITY.

A contract for the sale of municipal bonds, to be delivered and paid for in the future, is not invalid for want of mutuality because of a provision that before acceptance of the bonds the seller shall furnish the buyer with a certified transcript of proceedings evidencing legality of issue to the satisfaction of the buyer's counsel, as such provision requires the buyer to submit the evidence to his counsel, and the counsel to pass thereon in good faith, and not capriciously.

2. SAME—SELLER'S RIGHT TO RESCIND.

A refusal to accept and pay for such bonds until all the stipulated evidence of their legality is furnished, where such evidence is obtainable, is not a repudiation of the contract on the part of the buyers, authorizing the sellers to rescind it.

In Error to the Circuit Court of the United States for Eastern District of Michigan.

John C. Donnelly, for plaintiffs in error.

Horace S. Oakley, for defendants in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

LURTON, Circuit Judge. This is an action at law for breach of a contract for the purchase and sale of certain negotiable bonds. The memorandum of sale was in the following words and figures:

"Detroit, Michigan, October 3, 1893.

"Messrs. N. W. Harris & Co., Bankers, Chicago, Ills.—Gentlemen: We hereby sell and agree to deliver to you $100,000 boulevard improvement bonds, issued by the city of Detroit, Michigan, to be dated November 1, 1893, to bear interest at the rate of 4 per cent. per annum, payable semiannually in gold coin, and due and payable in 30 days from the date of bonds. You agreeing to pay us for same par, less a commission of 2 per cent., or, in other words, 98 cents on the dollar for same. We to furnish you with certified transcript of proceedings evidencing legality of issue to the satisfaction of your attorneys prior to the delivery of same. You agreeing to take up and pay for said bonds upon their delivery to you in such amounts and at such times after November 1, 1893, as we may receive same from the city: provided, however, that we deliver all of said bonds between November 1, 1893, and February 1, 1894. This contract is made with you subject to our bid for said bonds made by us this day to the city of Detroit being accepted, it being understood that, if the city does not accept our bid for the above bonds, this contract is null and void. It is further understood that, in case we succeed in obtaining these said bonds in payment for our work, or by direct bid to the city, at any future time, we will deliver same to you on the same terms and conditions.

"Yours, truly,                          Michigan Stone & Supply Company,
                                        "By Gus F. Smith, President.
                                        "Henry Collins.

"Accepted: N. W. Harris & Co., by M. A. Devitt, Agent."

The Michigan Stone & Supply Company was awarded the bonds for which it had bid, and thus placed in position to carry out its contract with N. W. Harris & Co. By agreement between the parties, the amount agreed to be sold to Harris & Co. was reduced to

$70,000. November 21, 1893, Harris & Co. notified the contracting seller that their counsel had approved the bonds as legally issued, and that they were ready and willing to receive same. Delivery was, however, refused upon the ground that on a prior day these bonds had been tendered and refused, and therefore resold to another purchaser. There was a verdict and judgment for defendants in error.

The first objection is that the contract was void for want of mutuality. It is said that there was no consideration for the promise of the plaintiff in error to sell the bonds at the price named in the memorandum, inasmuch as defendants in error were under no obligation to receive them. This, it is said, leaves the engagement of the proposed sellers wholly unilateral, and unenforceable as an executory contract. In support of this position plaintiffs in error cite and rely upon a class of cases involving sales subject to the absolute right of the purchaser before final acceptance to be satisfied with the article tendered him. Of this class are the cases of McCarren v. McNulty, 7 Gray, 139; Brown v. Foster, 113 Mass. 137; Gibson v. Cranage, 39 Mich. 49; Machine Co. v. Smith, 50 Mich. 565, 15 N. W. 906. In the case last cited a distinction is pointed out between contracts subject to the satisfaction of one of the parties, where the matter of satisfaction is one of individual taste, sentiment, or feelings, and where satisfaction must depend upon matters equally within the discernment and observation of others. In the first class the courts rarely permit the will of the party declaring himself dissatisfied to be questioned, while in the other some reasonable test must have been given, and good faith exercised, unless the contract is so clear as to leave no doubt that rejection might be rested upon no reason other than the will of the party himself. To the latter class of cases belong such cases as Manufacturing Co. v. Brush, 43 Vt. 528, and Daggett v. Johnson, 49 Vt. 345, in both of which were involved contracts for the sale of machinery subject to the satisfaction of the buyer therewith. In each case it was held that the buyer had no right to act capriciously, but must fairly test and act honestly in ascertaining whether the article would give satisfaction. The objection that a contract is unilateral does not make it a nude pact, provided it rests upon a consideration. In the case of Railway Co. v. Witham, L. R. 9 C. P. 16–19, a like objection was urged to the enforcement of a contract. The facts were that Witham made a proposal in writing to sell to the railroad company such supplies as they should order within a year at prices specified. This was accepted, and some orders given and filled. Subsequently orders were refused, and for such refusal an action for a breach of contract was brought. The defense was that the contract was void for want of mutuality, the railway company being under no obligation to give any orders. The action was sustained, Keating, J., saying, among other things:

"If before the order was given the defendant had given notice to the company that he would not perform the agreement, it might be that he would have been justified in so doing. But here the company had given the order, and had consequently done something which amounted to a consideration for the defendant's

promise. I see no ground for doubting that the verdict for the plaintiffs ought to stand."

Brett, J., said:

"This action is brought for the defendant's refusal to deliver goods ordered by the company, and the objection to the plaintiffs' right to recover is that the contract is unilateral. I do not, however, understand what objection that is to a contract. Many contracts are obnoxious to the same complaint. If I say to another, 'If you will go to York. I will give you 1,001,' that is in a certain sense a unilateral contract. He has not promised to go to York. But, if he goes, it cannot be doubted that he will be entitled to receive the 1,001. His going to York at my request is a sufficient consideration for my promise. So, if one says to another, 'If you will give me an order for iron, or other goods, I will supply it at a given price,' if the order is given, there is a complete contract, which the seller is bound to perform. There is in such a case ample consideration for the promise. So here, the company having given the defendant an order at his request, his acceptance of the order would bind him. If any authority could have been found to sustain Mr. Seymour's contention, I should have considered that a rule ought to be granted. But none has been cited. Burton v. Railway Co. [9 Exch. 507] is not at all to the purpose. This is matter of every day's practice, and I think it would be wrong to countenance the notion that a man who tenders for the supply of goods in this way is not bound to deliver them when an order is given. I agree that this judgment does not decide the question whether the defendant might have absolved himself from the further performance of the contract by giving notice."

The subject-matter of this contract was negotiable bonds to be issued for street improvements to be made under a contract between the city and the plaintiffs in error. They had not been issued when this agreement was entered into. It was a most reasonable and prudent thing for proposing purchasers to stipulate for some security against the invalidity of such bonds before being required to receive and pay for them. To this end the agreement provided that the sellers should furnish the buyers with a "certified transcript of proceedings evidencing the legality of issue to the satisfaction of the buyers prior to delivery of same." The plain meaning of this was: (1) That plaintiffs in error were to furnish certified copies of the proceedings under which these bonds were issued. (2) Defendants in error were to fairly and honestly submit this record, when furnished, to the judgment of counsel selected by them. (3) The counsel thus selected must not capriciously and arbitrarily reject the bonds, but, on the record, honestly and fairly give his judgment as to their legality. Waiving for the moment the question of the right of either party to withdraw from this agreement before anything had been done, no such right was exercised until the execution of this agreement had been begun. The sellers caused a "transscript of the proceedings" under which the bonds had been issued to be prepared, and forwarded same to the buyers. The buyers employed counsel, a gentleman particularly skilled in the matter of the validity of municipal bonds, and submitted this evidence to him, and procured his opinion. This opinion pointed out four objections, and called for certain other evidences by which these objections might be removed. This opinion, together with a demand for evidence covering the objections of counsel, was submitted to the sellers. The latter, through their agent, Mr. Carleton, more than once agreed to supply the missing evidence. Three of the objections were re-

moved by the additional matter supplied, and evidence covering the fourth and final objection promised. Just at this point most inexcusable difficulties were encountered. The fourth objection of counsel was in these words:

"It should appear that the resolutions passed by council on April 4, 1893, and April 13, 1893, were approved by the mayor of the city, as required by the 1887 amendment of the city charter (chapter 7, § 13). The form of the bond is sufficient."

It subsequently appeared that the mayor had approved these resolutions, and evidence of this fact was the only matter required to complete the evidence of the valid issue of these bonds. This had not been furnished when, on November 14, 1893, Harris & Co. were tendered the bonds, and the sale declared off, because they would not then accept and pay for same. Manifestly, the expense incurred by the buyers in endeavoring to carry out their part of this agreement furnished a good consideration, and supports their demand for damages for a breach of the agreement on the part of the proposed sellers. But this agreement was not unilateral. That objection is founded upon the assumption that the defendants in error had an absolute and unqualified right to refuse to take the bonds; that, no matter how capricious and arbitrary their refusal, they had the right to refuse with or without reason. This is a total misconception of the plain intent of the parties as manifested by the whole tenor of the language employed. The buyers undertook, by their acceptance of this contract of sale, to employ counsel learned in the law, and submit to him the evidences furnished by the sellers bearing on the question of the validity of these bonds. The contract to take and pay for the bonds was suspended until such an opinion was procured. But when the validity of the bonds had been determined the obligation to receive and pay for them became absolute. They could not willfully refuse to submit the matter to a competent attorney, nor could the attorney decide capriciously, nor render judgment arbitrarily. The matter was not one touching the taste, feelings, or sentiments of the buyer; neither was such language employed as would justify the court in saying that the absolute and unqualified right of rejection was reserved to the buyer. The question of the validity of the bonds was to be settled by the opinion of a third person, whose judgment was to be a legal opinion based upon the law and facts touching these bonds. Neither party would be concluded by an opinion rendered arbitrarily, and without the honest intent of deciding fairly and rationally. The contract seems to us to come fairly within the principle applicable to contracts under which settlements between parties are made dependent upon the certificate of some third person. The rule in such cases is that, "in the absence of fraud, or such gross misconduct as would necessarily imply bad faith, or the failure to exercise an honest judgment," the action of such third person should conclude both parties. Kihlberg v. U. S., 97 U. S. 398; Railroad Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035; Railroad Co. v. Price, 138 U. S. 185, 11 Sup. Ct. 290; Mundy v. Railroad Co., 14 C. C. A. 583, 67 Fed. 633. In the case of

Folliard v. Wallace, 2 Johns. 395, the opinion was by Kent, C. J. The action was one of covenant. Land had been sold and conveyed upon a consideration payable three months after the vendee "should be well satisfied that they held the said 600 acres of land undisputed by any person whatsoever." The plea was that the defendants "were not satisfied that the said land can be held undisputed by any person whatsoever," and a claim in favor of certain third persons was said to exist. The replication set up that the claim said to be outstanding had been decided under an arbitration some time previous. Kent, C. J., rendered the opinion of the court, and, among other things, said:

"He was to pay three months after being well satisfied, etc., and the award of the Onondaga commissioners ought to have satisfied him, until some lawful title appeared to controvert the one held under that decision. * * * Nor will it do for the defendant to say he was not satisfied with his title, without showing some lawful incumbrance or claim existing against it. A simple allegation of dissatisfaction, without some good reason assigned for it, might be a mere pretext, and cannot be regarded. If the defendant were left at liberty to judge for himself when he was satisfied, it would totally destroy the obligation, and the agreement would be absolutely void. But here was a real obligation contracted, and the true and sound principle is laid down in Pothier (Traite' des Obligations, No. 48) that, if A. promises to give something to B. in case he should judge it reasonable, it is not left to A.'s choice to give it or not, since he is obliged to do so in case it be reasonable. The law in this case will determine for the defendant when he ought to be satisfied; and until he shows some lawful claim or title to countervail that which he derived from the plaintiff, and which has been confirmed by the award of the commissioners, the intendment of law is that his title is complete, and he is, consequently, bound to pay. The first plea of the defendant is, therefore, bad."

Touching the failure of the plaintiffs in error to produce a certificate showing that the mayor had approved this bond resolution, the court below said:

"I instruct you, gentlemen, that whether or not the charter of the city of Detroit required the mayor to approve this resolution in question is immaterial, for the reason that the production of that approval, or of evidence of that approval, has been made the subject-matter of the contract of October 3d. The one party required it and the other party had agreed to furnish it, so it becomes immaterial whether it was necessary to the validity of the bonds or not."

Counsel have sought, by an exception to this language, and by an exception based on the refusal of the court to give their second request in charge to the jury, to start the question that the validity of these bonds did not depend upon the signing of these resolutions by the mayor. The charge refused was in these words:

"If the jury find that the plaintiffs were not acting in good faith in their demands for further information at the time the tender of November 14, 1893, was made, and that said demands were made for the purpose of delay, and not with the intention of getting legitimate information, then defendants would be justified in refusing to carry out the contract of October 3d, made with plaintiffs."

There was not the slightest evidence to indicate that the agent of defendants in error was not acting in good faith in endeavoring to get evidence that the mayor had approved this resolution. Learned counsel had expressed the opinion that such approval was necessary to the validity of the issue, and no reason has been advanced contrary to that opinion. But, aside from the soundness of this view

of counsel, the fact was that evidence of the character called for actually existed. That evidence was demanded, and plaintiffs in error were bound to furnish it. This they did not do, and neither then nor on the trial did they offer any reason for failing to produce it. The question of the effect of the failure of the mayor to sign this resolution lay behind the question of the effect of the refusal of plaintiffs in error to furnish evidence of an existing fact which they were bound to produce because it constituted one of the facts in the history of this bond issue. What the court said was, in substance and meaning, this:

"You will not consider whether these bonds might not have been valid although the mayor failed to approve the resolutions of the city council authorizing their issue. That question could only arise if it should be shown that the resolution was not approved. The fact that he did approve this resolution constituted one of the facts in the proceedings authorizing these bonds, and evidence of this fact the defendants had obligated themselves to produce."

Thus understood, there was no error, and both assignments of error are bad.

Error is assigned upon so much of the charge of the court as is contained in the following language:

"Now, if Mr. Fudge, as I have stated to you, rested his declension of the tender, —for that he declined to receive the bonds is not questioned,—if he rested it on the illegality of the issue, because of the misrecital of the date, the bonds containing the date, I believe, April 5th, when it should have been April 4th, if he put his objection to the receipt of the bonds on that point, and declined to receive them because of that error, then it is for you to say whether or not Mr. Fudge acted in good faith in that matter, regarding the transaction at an end. If he understood from what occurred there, the defendants, the Michigan Stone & Supply Company being represented by its president, Mr. Smith, that Fudge's declaration in behalf of the plaintiffs was absolute he would not receive the bonds, it is for you to say whether they were not justified in regarding themselves released from that contract. If Mr. Fudge insisted on that condition, and made that absolute objection to the bonds, as I have said to you, the defendants might regard themselves as at liberty to dispose of the bonds otherwise."

This presents the most difficult question in the case. The variance referred to was wholly immaterial, and Mr. Wood, attorney for Harris & Co., had passed it over, both by failing to specify any such objection and by assenting to the form of the bond. If, therefore, these bonds were rejected for this misrecital, plaintiffs in error were justified in treating the contract as rescinded, and in making a sale to another purchaser. The question as to whether Mr. Fudge, who was the agent for defendants in error, acted in good faith in rejecting the bonds for this reason alone, was a question wholly immaterial. It is no answer to a suit for a breach of contract that it was broken in good faith. But did this language, when read in connection with other parts of the charge, mislead the jury? There was a sharp conflict of evidence as to the reason given by Mr. Fudge for rejecting the tender of these bonds made to him on November 14, 1893. His testimony was that he declined to then accept the bonds because the evidence bearing on their legality had not been furnished. His letter of authority plainly stated that all of the objections made by Mr. Wood had been met by additional

papers furnished, except the fourth and last, which related alone to the approval by the mayor of the bond resolutions of the city council. Evidence of this fact he was instructed to procure, and, if the facts were such as to remove this objection, he was authorized to arrange for the payment of the price. These instructions, he says, he either read or stated to the parties. The agents of plaintiffs in error denied that he either read or stated his instructions, and affirmed that he put his rejection alone upon the ground that the bonds were illegal because of an alleged misrecital of the date of the resolutions under which they were executed. This issue of fact went to the jury, and has been found in favor of defendants in error, unless they were misled by the paragraph of the charge under consideration. But the court did not tell the jury that a bad objection made in good faith would save to the plaintiffs the right to have it ignored, nor anything of a like character. The learned trial judge had doubtless in mind the request made by counsel for defendants below touching the question of good faith of Fudge in making demands for further evidence at the time of the tender made to him, as presented in their second request, heretofore set out. The theory of the plaintiffs in error was that Mr. Fudge had waived the nonproduction of the missing evidence of approval by the mayor by placing his objection upon a totally different ground, a ground wholly immaterial, and theretofore waived by an acceptance of the formal parts of the bond. This theory was put to the jury by the court fully and clearly in the following language:

"The plaintiffs, as I have sa' 'to you, had the right to stand upon their agreement, and to require as an indispensable condition of their obligation to take up these bonds and pay the sum due—$68,600, I believe—that the papers should be satisfactory to Mr. Wood. Did they stand upon it? If they did stand upon it, and if you believe from the evidence that Mr. Fudge came there as the authorized agent of the plaintiffs, and waived that condition, and for no other reason than that stated by defendants refused to accept the bonds, if he declined to take them, saying they were not a legal issue, or for any other reason absolutely declined to take the bonds, that would have been, or that was, if that was so, a breach of contract on his part, which would be a breach of the contract on the part of the plaintiffs to take those bonds according to this obligation. The plaintiffs, as I have said, might have stood upon the original condition. If they did so stand, and if Mr. Fudge did not decline to take the bonds for that reason, but as he states, and if you believe states truthfully, if, as he states, he demanded the papers called for by Mr. Wood's opinion, and made the production and the furnishing of those papers the condition on which he was ready to pay the money, he had a right to stand upon that in the interest of the plaintiffs, and until that time, or until they were produced, the defendants had no right to rescind the contract. They had obligated themselves that these papers should be produced which would be satisfactory to the plaintiffs' attorney, who was Mr. Wood in this case, who had the matter immediately in charge. And they had a right to insist that such papers should be produced before the defendants became entitled to declare or require the immediate payment of the bonds. In other words, by that contract, unless its condition was waived, as I have said, by Mr. Fudge's action here, the plaintiffs had a right to say, 'You have not produced the papers which you have agreed to produce and have made the condition precedent to our payment of this money.' And, if that were so, then the defendants were wrong in selling these bonds. They were wrong in disposing of them before they had furnished the papers they had agreed to furnish. I will say, in that connection Mr. Fudge testified, 'I don't know that I have got his exact words, but I think I have the substance of them as I followed it, that he did not reject the tender because of any

mistake in the date of the resolution, but because of the failure to furnish the papers required by the contract, the mayor's approval,' etc. And his exact language, as I have it in my notes, and that your own memories will correct: 'I don't know that these bonds are a legal issue, inasmuch as I have not been furnished with the papers establishing their legality.' That, in substance, is what Mr. Fudge says he there stated in answer to the tender made to him."

This covered the whole ground. If the fact was as stated by Fudge, then the tender made before the production of the evidence of approval by the mayor was premature, and defendants in error did not repudiate their contract by refusing the tender then made. If, however, the facts were as contended by the defendants below, then the court plainly said, "That was, if that was so, a breach of contract on his part, which would be a breach of the contract on the part of the plaintiffs to take the bonds according to this obligation." But all possible doubt as to the misleading character of the language complained of is removed by the concluding language of the court in the same connection, which was that: "If Mr. Fudge insisted upon that condition, and made that absolute objection to the bonds, as I have said to you, the defendants might regard themselves as at liberty to dispose of the bonds otherwise. It is for you to say what did occur at that interview."

In view of the whole charge, we think the inadvertent language used by the court was cured, and that no possible harm could have resulted therefrom. We are strongly impressed with the rightness of this judgment, and are, therefore, the more inclined to the view we have taken as to the harmlessness of the observation of the court touching Fudge's good faith.

Other errors have been assigned. They are without merit. Their detailed consideration would be of no value to the profession, and no comfort to plaintiffs in error. Let the judgment be affirmed.