Argued 21 April, decided 16 May, 1904.

## LIVESLEY *v.* HEISE.*

[76 Pac. 952.]

MUTUALITY OF HOP CONTRACT IN QUESTION.

1. A contract by which one party sells and agrees to deliver to the other party a certain part of particular crops to be raised during a series of years, and such other party agrees to buy such part of said crops at a specified price, payable in certain installments, if, in the purchaser's judgment, the condition of the crop will warrant it, and to advance each year certain amounts for cultivation, to be deducted at the time of the final payment, provided that in case of a shortage in the crop from causes beyond the control of the first party, he shall be liable to repay only the advances, is mutual and enforceable.

SPECIFIC PERFORMANCE OF SALE CONTRACT—FRAUD BY VENDOR.

2. A fraudulent combination between one who has contracted to sell property not yet in existence, a crop to be grown, for example, and others, to avoid compliance with the contract, is ground for equitable relief by requiring specific performance.

From Polk: REUBEN P. BOISE, Judge.

This is a suit by T. A. Livesley and another, partners as T. A. Livesley & Co., against A. Heise and others, to compel the specific performance of a contract for the sale and delivery of hops, made and entered into January 22, 1901, between the defendant A. Heise, of the first part, and the plaintiffs, T. A. Livesley & Co., of the second part. Its provisions, so far as they are material, are as follows:

"The Party of the First Part has bargained and sold, and by these presents does grant, sell, and convey unto the said parties of the second part, thirty thousand pounds (net weight) of his crop of hops, the growth of the years 1901, 1902, 1903, 1904, and 1905, grown on Emerson Harris' and Mrs. N. W. Harris' farm, situated on right and left side of main road between Bethel and Independence three miles south of Bethel, in Polk County, State of Oregon, of which farm forty acres are set out in hops, and are now being by him cultivated, and which are to be harvested during the years 1901, 1902, 1903, 1904, and 1905, to have and to hold the same unto said T. A. Livesley & Co., their executors, administrators, or assigns forever.

---

*NOTE.—A motion to dismiss the appeal herein was overruled on April 4, 1904. There was a memorandum opinion only, following *Livesley* v. *Johnston*, *ante*, p. 30.—REPORTER.

"The Said Party of The First Part Hereby Agrees to complete the cultivation of the said hop crop and to harvest, cure, and bale the same in good first-class and workmanlike manner, and immediately thereafter, and not later than Oct. 13th of each year to deliver the 30,000 pounds of the same in bales of about one hundred and eighty-five pounds each, in new 24-oz. bale cloth (seven pounds tare per bale to be allowed) at Crowley, Oregon. Said hops when delivered are to be not the product of a first year's planting, and not affected by spraying or mould, and are to be of choice quality and in sound condition, good color, fully matured, cleanly picked, free from vermin damage, properly dried and cured, and in good merchantable order and condition, and shall be delivered in lots of not less than entire contract bales, to the said parties of the second part, their agents, executors, administrators, or assigns; and the said party of the first part further agrees that this contract has preference, both as to quantity and quality, over all other contracts made as to said growth of hops by said party of the first part with any other purchaser, and it is understood and agreed that said parties of the second part, or their agent, may at any time after the execution of this agreement, have full and free access to and upon said described premises. Said party of the first part further agrees at least ten days before baling said hops, that he will notify said parties of the second part, or their agents, in writing, of the time at which he will be in readiness to deliver said hops, which said notice shall be personally served upon said parties of the second part. or their agent.

"It is Further Agreed that when the said hops are delivered they may be inspected by the parties of the second part, or by an agent selected by said parties of the second part, at the time of the delivery of any lot thereof, or at any time thereafter within ten days after delivery of the entire quantity hereby bargained and sold shall have been completed, and should said hops, or any part thereof, not be delivered in the condition herein agreed upon, according to the judgment of said parties of the second part, or their said agent, the said party of the first part shall, upon demand, repay to said parties of the second part such sums of money

as they may have advanced on the said crop, with interest at the rate of eight per cent per annum from the date when advanced, and this instrument shall be a chattel mortgage on the entire crop of hops raised on the above-described land to secure the payment of said sums advanced and interest and the performance of all the provisions hereof; and if not paid upon demand, the said parties of the second part may forthwith and without further notice take possession of said hops and sell the same, with or without notice to the party of the first part, upon ten days' advertisement as herein provided, and out of the proceeds retain such sums and interest and all costs, including attorney's fees, rendering the surplus, if any, to the party of the first part. * *

"And in consideration of the foregoing, said Parties of The Second Part do Hereby Agree to pay to said party of the first part the sum of ten cents per pound for each pound of hops delivered and accepted on the conditions stipulated for, that is to say $100 paid upon signing of these presents, the receipt whereof by said party of the first part is hereby acknowledged; five cents per pound for each pound of hops hereby bargained to be paid at the time of picking said hops, upon ten days' notice from said party of the first part, if in the judgment of the parties of the second part the crop is in fit condition to warrant the advances, and the balance, if any there may then be due, after delivery of the entire amount bargained and sold to and accepted by said parties of the second part at the time and place and in the condition as hereinbefore provided.

"It is Further Agreed that all advances made, as hereinbefore provided, shall bear interest at the rate of eight per cent per annum up to the time of acceptance of all said hops by said parties of the second part, and that the parties of the second part, through their agents, shall have the right to determine at picking time, when said advances are contemplated to be made, whether or not the growing crop at that time is in proper condition, and if such agents of the parties of the second part shall determine that the growing crop is not in such condition, then said parties of the second part shall be released from any obligations to furnish picking money as called for in this contract. The

party of the first part shall not be liable (except to repay advances) for any shortage on delivery due to causes beyond his control. * *

"It is Further Agreed by the parties of the second part that they are to advance each year the sum of three hundred dollars with the exception of the first year, 1901, which said year they have agreed to advance four hundred dollars, during the months of April and May, for eight per cent, and to be deducted from the purchase price of hops when contract is delivered."

The complaint sets out the contract, and, further, that at the time of the execution thereof the defendant A. Heise was a tenant and in possession of the land described therein, which he had previously leased from N. W. and E. L. Harris, under a lease to expire about October 26, 1905; that plaintiffs have performed all the terms and conditions of the contract on their part, but that defendant A. Heise has refused to perform, and has conspired with his codefendant Rachael E. Heise, his wife, and W. C. Heise, his son, to defraud plaintiffs — that is to say, he voluntarily and unlawfully, and with intent to defraud plaintiffs, surrendered up to said N. W. Harris and E. L. Harris his said lease for the premises, and pretended to have the same canceled and to surrender possession of said premises to them, but that in fact they were not so surrendered; that the defendant A. Heise, notwithstanding, continued in possession under an agreement with the owners that they would immediately lease the premises to his wife and son; that the latter have ever since, with full knowledge of the contract of sale, pretended to conduct said hopyards and farm in their own names, but that it was done with the sole purpose of assisting A. Heise in circumventing plaintiffs and defrauding them out of their rights under their contract; that there were produced upon the premises during the present year (1903) 175 bales of hops, as the net share of the tenants, which in reality belong to the defendant A. Heise;

that he has refused to accept from plaintiffs any of the advances agreed to be made, they having been duly tendered, and has refused to deliver the hops produced, as stipulated; that he is insolvent; that plaintiffs have no plain, speedy, and adequate remedy at law, and have tendered into court for defendants $3,000, the full contract price of the hops. A decree is demanded, declaring the transactions between the defendant A. Heise and Rachel E. and W. C. Heise fraudulent and void as to plaintiffs, and that they be required to deliver to plaintiffs so much of the crop produced as will make 30,000 pounds, and for such other relief as may seem equitable. A demurrer having been sustained to the complaint, and a decree entered dismissing the suit, plaintiffs appeal.          REVERSED.

For appellants there was an oral argument by *Mr. Wirt Minor* and *Mr. Woodson T. Slater*, with a brief over the names of *W. T. Slater*, *Wm. M. Kaiser*, and *Teal & Minor* to this effect.

In contracts for the sale of personal property or a certain kind or quality or in a certain condition the seller must deliver the property to the buyer according to the terms of the agreement, and upon such delivery the buyer has the right of inspection, and is bound to take the property only if it be in fact of the kind or quality, or in the condition, bargained for; but if he rejects the proffered articles when they are as bargained for, he is liable to the seller. The parties may agree upon the inspector, and then both parties are bound by his decision, unless it be shown that he acted fraudulently, capriciously, arbitrarily, or in bad faith: *Mack* v. *Slateman*, 21 Fed. 109; *Bentley* v. *Davidson*, 74 Wis. 420; *Wendt* v. *Vogel*, 87 Wis. 462; *Linch* v. *Elevator Co.* 80 Tex. 23; *Martinsburg & P. R. Co.* v. *March*, 114 U. S. 549; *Kihlberg* v. *United States*, 97 U. S. 398; *Sweeney* v. *United States*, 109 U. S. 618; *Railroad Co.*

v. *Price,* 138 U. S. 185; *Chapman* v. *Lowell,* 5 Cush. 378; *North Pac. Lum. Co.* v. *East Portland,* 14 Or. 3; *Pope* v. *Allis,* 115 U. S. 363; *Faulkner* v. *Hebard,* 26 Vt. 452; *Parson* v. *Woodward,* 22 N. J. L. 196; *Dambmann* v. *Lorentz,* 70 Md. 380.

For respondents there was an oral argument by *Mr. Geo. G. Bingham* and *Mr. Peter H. D'Arcy,* with a brief over the name of *Mr. Bingham* to this effect.

(1) A contract to be enforceable must be mutually binding upon the parties, so that each may maintain an action against the other for a breach thereof: *Woolsey* v. *Ryan,* 59 Kan. 601 (54 Pac. 664); *Missouri, K. & T. Ry. Co.* v. *Bagley,* 60 Kan. 424 (56 Pac. 759); *Cummer* v. *Butte,* 40 Mich. 322 (29 Am. Rep. 530); *Davie* v. *Lumberman's Min. Co.* 93 Mich. 491 (53 N. W. 625, 24 L. R. A. 357); *Teiple* v. *Meyer,* 106 Wis. 41 (81 N. W. 982); *Jordan* v. *Indianapolis Water Co.* (Ind.) 61 N. E. 12.

(2) A court of equity will not decree specific performance of a contract that is not fair in all its provisions: *Snider* v. *Lehnherr,* 5 Or. 385, 390; *Hamilton* v. *Ryan,* 103 Ill. 212; *Washington* v. *Krutz,* 119 Fed. 280, 287; *Logansport Ry. Co.* v. *Logansport,* 114 Fed. 688.

(3) A promise made by one party without a corresponding obligation or promise by the other party is void: *Corbett* v. *Salem Gas Light Co.* 6 Or. 405 (25 Am. Rep. 541).

(4) There must be mutuality of remedies: *Norris* v. *Fox,* 45 Fed. 406; *Federal Oil Co.* v. *Western Oil Co.* 112 Fed. 373.

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. The contract or agreement forming the basis of this suit is of similar character to the one sued on in the case of *Livesley* v. *Johnston* (just decided), 45 Or. 30 (76 Pac. 946). There is one important difference, however, which relates to the acceptance of the hops. If of lesser quality than is

contracted for, Livesley & Co. have not here the option to purchase any amount. Another particular may be noted. There was here no consideration paid for the execution of the contract, as appears from the Johnston contract, and as alleged in the complaint in that case. Notwithstanding these differences, however, the same considerations of construction as to the binding effect of the contract upon the parties will apply here as in the Johnston Case, and it must be held to be valid and obligatory.

2. In the present case, in addition to the idea of a joint venture, as stated in the opinion in the Johnston Case, there is clear ground for equitable intervention to require specific performance to deliver the hops, which consists in the alleged fraudulent collusion of the parties defendant, entered into with a view on the part of A. Heise to avoid his obligations to plaintiffs under the contract.

The complaint being otherwise sufficient, the decree of the trial court will be reversed, the demurrer overruled, and the cause remanded for such further proceedings as may seem proper.                REVERSED.

---

Decided 27 June, 1904.