[Civ. No. 7670. First Appellate District, Division One.—April 24, 1931.]

GEORGE L. MELTON, Appellant, v. WALTER P. STORY et al., Respondents.

Gibson, Dunn & Crutcher and Ira C. Powers, for Appellant.

Louis P. Boardman and Philip C. Boardman for Respondents.

GRAY, J., *pro tem.*—In this action to recover a commission for procuring a purchaser of realty bonds appellant seeks a reversal of an adverse judgment, based upon a verdict, on the ground that an instruction, erroneously construing an alleged contract between such purchaser and respondents, directed a verdict against him on the issue of performance. As the appeal presents no issue as to the employment, it is sufficient to say that the uncontroverted testimony shows that at a meeting of appellant and respondents Story and Powers, the former was employed for a commission to procure a purchaser of a proposed bond issue and that the conflicting testimony of the parties left for the jury's decision whether respondent Riley was then present and whether the bonds were also to be secured by personal guarantees as well as by realty.

To prove his production of a purchaser ready, able and willing to buy, appellant offered and the court admitted a so-called paper signed by a bond house (the proposed purchaser) and respondents. As to its legal effect, the court instructed the jury (1) "that the paper . . . not having been signed by all the parties thereto, was not an executed instrument or binding upon any of said parties, . . . (2)

and that the terms and provisions of such paper are conditional and do not constitute a binding offer of purchase of the bonds therein referred to by'' the bond house. ■ Since this paper constituted appellant's sole evidence on the issue of performance, this instruction by telling the jury it was insufficient for that purpose, directed a determination against appellant on that issue, which necessarily forced the jury to render a verdict in favor of respondents. If this instruction is incorrect, it obviously was prejudicial and must require a reversal. (*Tennant* v. *Wilde,* 98 Cal. App. 437 [277 Pac. 137].) The question then to be determined is whether the instruction is a correct statement of law, applicable under the facts.

■ The first clause of the above-quoted instruction was undoubtedly based upon the fact that, although the caption stated it was an agreement between respondents and two other persons, as parties of the first part, and the bond house, as party of the second part, the paper was signed only by respondents and the bond house. ''Where several persons are named in the body of an instrument as parties thereto, it is not necessarily invalid, as against those who have signed it, because others named have not signed. Such a result would follow where it appears on the face of the instrument, or by proof, that the person sought to be charged signed upon the consideration that other persons named would also sign. (*Cavanaugh* v. *Casselman,* 88 Cal. 549 [26 Pac. 515].)'' (*Kurtz* v. *Forquer,* 94 Cal. 91, 93 [29 Pac. 413].) See, also, *Winter* v. *Kitto,* 100 Cal. App. 302 [279 Pac. 1024]. In the instant case, not only does the face of the paper fail to show that respondents signed upon consideration that the two other persons would sign, but there is also an entire absence of oral evidence as to such consideration or of a delivery of paper, as executed, upon condition that such other signature would be obtained. Therefore the above clause was erroneous.

■ Before entering upon a discussion of the second clause of the instruction, it is well to state the proper method of approach required by the Civil Code. ''A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.'' (Civ. Code, sec. 1643.) ''An

interpretation which gives effect is preferred to one which makes void." (Civ. Code, sec. 3541; see, also, *Tennant* v. *Wilde, supra.*) This clause of the instruction was based upon the following provision of the contract: "When the foregoing agreement shall have been fully complied with, *if second parties are satisfied with the appraisal of the property, the Sales Contracts and the details of the issue of the bonds,* and when said bonds are ready for delivery, said second parties agree to take and pay for and first parties agree to sell for the price of and to accept in full payment for said issue of bonds. . . . " (Italics ours.) Bearing in mind that the consideration moving to each party was the promise of the other and that the above-quoted section contains the sole promise of the bond house, is that promise so conditional or optional as to provide no consideration and hence void the contract for lack of mutuality? "To be obligatory on either party, a contract must be mutual and reciprocal in its obligations." (*Doe* v. *Culverwell,* 35 Cal. 291, 295, approved in *Harper* v. *Goldschmidt,* 156 Cal. 245, 248 [134 Am. St. Rep. 124, 28 L. R. A. (N. S.) 689, 104 Pac. 451].)

The foregoing agreement fixed the date, interest rate and place of payment of the bonds and provided that they should be a first mortgage on described lands. It obligated the first parties to pay the federal income tax and to furnish a certificate of the state superintendent of banks, approval of the state corporation commissioner and a list of sales monthly. So far the agreement is definite and certain in its imposition of obligations upon respondents alone. It further provided that the form of the deed of trust should be approved by designated attorneys, that the sales of the property should be placed in the hands of parties *satisfactory* to the bond house, and that the latter, at respondents' expense, might have an independent appraisal made of the property and should not be required to purchase the bonds if such appraisal was not *satisfactory* to it.

The question as to whether the bond house's promise to buy is illusory, because of the conditions as to its satisfaction in the above-enumerated matters is answered by a determination—what test is to decide such satisfaction. While diligent search of court and counsel has failed to disclose any California case directly in point, assistance is

given by certain principles well settled as to the kindred question of performance, which tacitly assumes the existence of a valid contract. "'A stipulation in the contract to perform to the satisfaction of one of the parties only calls for such performance as should be satisfactory to a reasonable person.' (*Gladding, McBean & Co.* v. *Montgomery*, 20 Cal. App. 276 [128 Pac. 790]; *Bryan etc. Co.* v. *Law*, 31 Cal. App. 204 [160 Pac. 170]; *Bruner* v. *Hegyi*, 42 Cal. App. 97, 183 Pac. 369].) This rule does not apply where the performance involves matters dependent on fancy, taste, sensibility, or judgment of the other party, but it does apply where the question is merely one of operative fitness or mechanical utility, and especially to contracts for the erection of buildings. (*Tiffany* v. *Pacific Sewer Pipe Co.*, 180 Cal. 702 [6 L. R. A. 1493, 182 Pac. 428].)'' (*Thomas Haverty Co.* v. *Jones*, 185 Cal. 285, 296 [197 Pac. 105, 110].) " . . . but when it is apparent that the question of satisfaction relates to the commercial value or quality of the subject matter of the contract, it must be shown that it is deficient or defective in these respects, and that the dissatisfaction is reasonable and well founded''. (*Van Demark* v. *California H. E. Assn.*, 43 Cal. App. 685, 687, 688 [185 Pac. 866, 867].)

These same principles have, in other jurisdictions, also been applied to determine whether contracts, containing similar conditions as to one party's satisfaction, are lacking in mutuality. A contract for the sale of future grown hops in which the buyer agreed to make advances, was held not wanting in mutuality, because the buyer had the privilege of taking all or part of the crop at reduced prices if, according to his judgment, quality and delivery were not as agreed, or because the buyer had the right to determine at picking time whether the crop was in proper condition and, if not so determined, was released from making advances. (*Livesley* v. *Johnston*, 45 Or. 30 [106 Am. St. Rep. 647, 65 L. R. A. 783, 76 Pac. 13, 946]; *Livesley* v. *Heise*, 45 Or. 148 [76 Pac. 952].) To the same effect, see *Lilienthal* v. *Stearns*, 121 Fed. 197; *Lehman* v. *Salzgeber*, 124 Fed. 479. A contract for the sale of corporate stock which was to be binding on the purchaser, if his examination of the books should be satisfactory and prove the correctness of an agreement as to earnings, was held not void for lack of mutu-

ality. (*Northern Central Ry. Co.* v. *Walworth,* 193 Pa. 207 [74 Am. St. Rep. 683, 44 Atl. 253].) In *Michigan Stone & Supply Co.* v. *Harris,* 81 Fed. 928 [27 C. C. A. 6], it was held that a contract for the sale of municipal bonds to be delivered and paid for in the future was not lacking in mutuality, because it provided that before acceptance the seller should furnish the purchaser with transcript of proceedings showing the legality of the issue to the satisfaction of the purchaser's attorney. It would appear, therefore, that the second clause of the instruction is also erroneous.

The judgment is reversed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 23, 1931, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 22, 1931.