[L. A. No. 4902. Department One.—July 5, 1919.]

JAMES TIFFANY, Respondent, v. PACIFIC SEWER PIPE COMPANY (a Corporation), Appellant.

[1] CONTRACTS—PERFORMANCE OF SERVICES—SATISFACTION OF PARTY— CASES OF OPERATIVE FITNESS OR MECHANICAL UTILITY.—In contracts involving matters of fancy, taste, or judgment, when one party agrees to perform to the satisfaction of the other, he renders the other party the sole judge of his satisfaction without regard to the justice or reasonableness of his decision, and a court or jury cannot say that such party should have been satisfied where he asserts that he is not. The rule is also applied to cases of operative fitness or mechanical utility when the contract clearly provides that performance shall be satisfactory to the promisor.

APPEAL from a judgment of the Superior Court of Los Angeles County. G. W. Nicol, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Swanwick & Donnelly for Appellant.

Donald Gallagher for Respondent.

SHAW, J.—Plaintiff sued for damages caused by an alleged wrongful discharge of plaintiff from the defendant's service. The court below made findings and entered judgment in favor of the plaintiff for $3,617.17, being the full amount prayed for in the complaint. Defendant appeals.

The defendant was engaged in the business of manufacturing glazed brick. Plaintiff was employed by the defendant as an "expert glazeman" for the term of three years beginning February 10, 1914, under a contract in writing made on February 12, 1914, and modified on May 12, 1914. The first contract provided that Tiffany should be employed by the defendant as expert glazeman for one year at three thousand dollars a year, with the privilege to defendant of changing the employment to three years at two thousand dollars per year at any time within six months "providing a product satisfactory to the defendant" was obtained within sixty days from the date of the contract. Tiffany began work and continued until May 12, 1914, on which date a modification

of the contract was made whereby the defendant employed Tiffany for three years from February 10, 1914, at $175 per month, upon the following condition:

"In consideration of the above provisions Mr. Tiffany will not hold the Pacific Sewer Pipe Company liable under said contract, in case for any reason the Pacific Sewer Pipe Company are unable to turn out enameled and glazed brick in quantities equal to the present quality and satisfactory to the Pacific Sewer Pipe Company.

"In the latter case Mr. Tiffany is to have ninety days notice before making a change."

Tiffany was discharged on May 10, 1915, without notice. The court found that up to that time plaintiff had fully performed his contract with a reasonable degree of skill and that the defendant, after the making of the contract, was at all times able to turn out enameled and glazed brick in quantities, equal to the quality which was being turned out on May 11, 1914, and which was satisfactory to said defendant. It is claimed that this finding is contrary to the evidence.

In the making of brick, the mud or clay is first pressed and molded to the shape desired, the glaze or enamel is then applied, and when a sufficient quantity to fill a kiln is thus prepared, the bricks are placed in the kiln and burned to the required degree. The principal duty of the plaintiff was to prepare and mix the glaze or enamel so that it would, when burned, have the hardness and other qualities necessary to make it durable and the brick salable. The glaze or enamel was a liquid into which the bricks were dipped so as to form a coat of the liquid on their surfaces.

It will be observed that the conditions expressed in the modification above quoted embraced three propositions. First, that the defendant should be able to turn out enameled and glazed brick in quantities. Second, that the brick turned out should be equal to the present quality. This obviously refers to the provision of the first contract that the three years' employment would be made if "a product was obtained within sixty days from its date which was satisfactory to the defendant." It appears from the evidence that at the time the second contract was made Tiffany was producing a quality of enameled and glazed brick which satisfied the defendant and induced it to enter into the second contract. The third proposition embraced in the added condition was that the

enameled and glazed brick produced by the service of plaintiff should not only be equal in quality to that being produced on May 12, 1914, but also that in quantities and quality `it should be "satisfactory to the Pacific Sewer Pipe Company." It is contended that there is no evidence to show that the defendant was satisfied with either the quantity or the quality of the enameled and glazed brick produced by the plaintiff for the defendant thereafter.   The law governing the rights of the parties under a contract which requires one party to do something which is satisfactory to the other party is thus stated in 13 Corpus Juris, at page 675: "Contracts in which one party agrees to perform to the satisfaction of the other are ordinarily divided into two classes: (1) Where fancy, taste, sensibility, or judgment are involved; and (2) where the question is merely one of operative fitness or mechanical utility.   [1]  In contracts involving matters of fancy, taste, or judgment, when one party agrees to perform to the satisfaction of the other, he renders the other party the sole judge of his satisfaction without regard to the justice or reasonableness of his decision, and a court or jury cannot say that such party should have been satisfied where he asserts that he is not."   (Sec. 768.)

The next section declares: "The rule stated in the preceding section is also applied to cases of operative fitness or mechanical utility when the contract clearly provides that performance shall be satisfactory to the promisor."   Similar statements will be found in 9 Cyc., at pages 618, 619, and 620.

A different rule applies where the contract provides for the construction of a building or the like, in accordance with plans and specifications fixed by the contract, to the satisfaction of the owner or of an architect employed by him. In these cases it is usually held that if the contract is performed as required by the plans and specifications, the person whose judgment is invoked must accept the performance and his mental condition as to satisfaction is immaterial.   In such cases the question whether the work is satisfactorily done or not, arises after the contract has been executed, either in whole or in part, and the satisfaction refers to that which is already done.   Elliott states the rule to be that such a contract does not justify the promisor in arbitrarily, unreasonably, and capriciously claiming that he is not satisfied, in order to

evade liability "and the courts in doubtful cases, especially when the thing furnished is so attached to the real property of the buyer that its value would be lost to the seller, either wholly or in great part, unless paid for, are inclined to construe such a stipulation as one to furnish such a thing as ought reasonably to satisfy the buyer. But where there is nothing to justify the contrary construction, the general rule is that the party to be satisfied is the judge of his own satisfaction, subject only to the limitation in most jurisdictions that he must act in good faith, and if he does so act and is really dissatisfied, he may reject the work or the article on the ground that it is not satisfactory to him. This rule is particularly applicable where the subject matter of the contract involves personal taste or feeling, as where an artist agrees to paint a portrait of another or some member of his family, to the satisfaction of such other or the like, but, as shown by the authorities cited in the last preceding note, the rule is not confined to such cases." (3 Elliott on Contracts, sec. 1881.) "It has been held that a contract for personal services so long as they are satisfactory to the employer, may be terminated by him whenever he is dissatisfied in good faith. . . . Similar rulings have been made in cases of contracts to manufacture or furnish articles to the satisfaction of the other party, even though a reasonable man would or ought to have been satisfied." (Ibid, sec. 1882.)

The decisions in this state have not attempted to state the rule with reference to cases like the present. In *Coplew* v. *Durand,* 153 Cal. 278, [16 L. R. A. (N. S.) 791, 95 Pac. 38], which involved a building contract, there were elaborate plans and specifications, as is usual in such cases, and the work was "to be done to the entire satisfaction of the owner and the architect." Before each payment was made a certificate was to be obtained signed by the architect. After the work was done both owner and architect stated that they were satisfied with it, but the architect refused to make a certificate. It appeared that the work was done conformable to the plans and specifications. The court merely held that under the circumstances the refusal of the certificate was unreasonable and that the contractor was entitled to recover as if it had been issued. In *Gladding etc. Co.* v. *Montgomery,* 20 Cal. App. 279, [128 Pac. 792], the district court of appeal remarked that "the stipulation in a contract to perfrom to

the satisfaction of one of the parties only calls for such performance as should be satisfactory to a reasonable person.'' This remark also referred to a building contract and with reference to portions of the work already done. Furthermore, it was an *obiter dictum*, the question not being involved in the case. In *Bryan Elevator Co.* v. *Law,* 31 Cal. App. 205, [160 Pac. 170], a building contract was also under consideration. The plaintiff agreed to construct an elevator in the defendant's building, that its operation ''shall give satisfaction in every particular,'' and that if the controlling device proved unsatisfactory, plaintiff would replace it with another ''satisfactory to the owner.'' The court followed the rule applying to building contracts in general and held that the contract only called ''for such performance as should be satisfactory to a reasonable person.'' In other cases, where the question of judgment was involved, the opposite rule has been applied. In *Parkside Realty Co.* v. *MacDonald,* 166 Cal. 426, [137 Pac. 21], a real estate contract, the seller agreed to make the title satisfactory to the buyer and his attorneys. The court said that the question was ''not whether the title was in fact a good and marketable one, but whether it was acceptable to respondent and his attorneys,'' citing *Allen* v. *Pockwitz,* 103 Cal. 88, [42 Am. St. Rep. 99, 36 Pac. 1039], and *Church* v. *Shanklin,* 95 Cal. 627, [17 L. R. A. 207, 30 Pac. 789]. The two cases cited involved a similar question and were to the same effect.

The contract in the present case was an executory one. The question does not involve the acceptance of any work already done by Tiffany under his employment. He was discharged from further employment because the defendant was not satisfied with the quality of his work. There is no sufficient evidence to support the finding that the defendant was satisfied with his work. During the time of his service many kilns of brick were burned which were glazed by him, and there is evidence as to some of these that the defendant's manager expressed himself satisfied. But there is no evidence, and no declaration or admission by any person authorized to speak for the defendant, that it was satisfied with his work as a whole. The contract authorized the defendant to discharge the plaintiff if his work was not satisfactory as a whole, although at times he might be producing brick of the finest quality. The object of the defendant in employing

the plaintiff was to obtain glazed and enameled brick for sale to its customers. The quantity of good brick produced out of each kiln, that is, the proportion of good brick to bad brick therein, was an important matter to them. For example, there is evidence that one customer agreed to buy 1815 glazed brick known as "bull-nosed," that is, with one or more corners rounded, that the glaze was mixed and applied by plaintiff and fifteen thousand bricks were so glazed and burned in order to obtain 1,815 good ones. Other evidence fixed the number burned for that job at five thousand, to obtain the required number. Quality was also important, for if the glaze was not rightly mixed it would scale off, or crack, after being burned, and if the color or transparency was not satisfactory to purchasers, the brick would not be as easily sold. All these matters would of necessity be determinable by the taste or judgment of the defendant's managers. And as their experience in the business was an essential element in the exercise of that judgment, it could not have been intended that some other person's judgment should determine the question of satisfactory performance. An express stipulation or necessary implication would be necessary to give such a contract that meaning. This contract neither declares it directly, nor requires it by implication. The terms of the contract imply that the defendant was not compelled to be satisfied if the quality produced equaled that which was being produced at the time the contract was made. The addition of the phrase "and satisfactory to the Pacific Sewer Pipe Company" implied a complete satisfaction and authorized the defendant to reject the brick or discharge Tiffany under the terms of the contract if for any reason of any character the quality or quantity of the product was not satisfactory. We think the contract falls within the rule applicable to cases where the judgment of the promisor is involved, and that his decision that he is not satisfied is conclusive on the other party and upon the court to which the question is presented.

The judgment for the amount awarded cannot be supported without the finding in question. None of the other findings supplies its place. The appeal must therefore be sustained.

The judgment is reversed.

Olney, J., and Lawlor, J., concurred.