[Civ. No. 3601. Third Appellate District.—February 20, 1929.]

J. V. COONEY, Respondent, v. THORNTON S. GLIDE, Appellant.

Huston, Huston & Huston for Appellant.

Gaddis & McDonald for Respondent.

PLUMMER, J.—The plaintiff had judgment against the defendant in the trial court for the sum of $583.25, as the

balance due on account of materials furnished and work and labor performed by the plaintiff at the special instance and request of the defendant. From this judgment the defendant appeals.

The respondent is a painting contractor residing in the city of Sacramento. The appellant is a farmer residing in Yolo County, on the road between Winters and Davis. The record shows that on or about the eleventh day of August, 1926, the appellant wrote to the respondent a letter in which he stated he had some painting which he desired done. In response to the letter the respondent went to the appellant's place of residence where the appellant pointed out a number of buildings which he desired painted. The buildings consisted of a dwelling-house, a tank-house, several bunkhouses, blacksmith-shop, hay barns, etc. According to the testimony the appellant stated that he wanted the buildings given two coats of white paint and desired the roofs to be painted green. There were fifteen units or fifteen different buildings pointed out by the appellant to the respondent, which the appellant stated he desired painted. After pointing out the buildings upon the farm where the appellant resided, the appellant and respondent then went to an adjoining farm facing on the Dixon road. This farm belonged to the appellant's mother, but was farmed by the appellant, and it appears that there was some tentative agreement as to the painting of the buildings situated on the latter mentioned premises. However, these buildings were not considered in the further negotiations of the parties which led up to statements as to prices and figures and character of work to be done upon the premises involved in this action. After the respondent had examined all of the buildings pointed out to him by the appellant upon the premises where the appellant resided, it appears that the respondent had measurements taken thereof and made estimates of what he would agree to do the work for, and in making such estimates, the painting of certain units involved in this action, six in number, were figured out as costing so much, and a statement of the amount that the painting of the six units would cost was made by the respondent to the appellant. After making the measurements, the respondent wrote out and delivered to the appellant the following letter or statement of what the total work would cost:

"Capital Compressed Air Painting Co.

"Sacramento, California, August 14th, 1926.

"Mr. Thornton Glide:

"Dear Sir: We submit herewith our estimate and bid in the sum of Fifteen Hundred Dollars ($1500.00) for painting on your Home Ranch, located on the Winters Road, as follows: We propose to apply by air brush method of application, two coats best Lead and Linseed Oil Paint to all exterior surfaces including porches, dormitories, balconies and floors, and two coats lead and oil paint by hand brush on all sash, frames, openings, screens, cornice or other trim on the residence, and two coats W. P. Fuller's best green and pure linseed oil on all roof surfaces of the same: Two coats best lead in oil paint on the side walls of tank house and shed, bunk houses and any other buildings now painted with lead in oil paint, and two coats of the above green in linseed oil on all roof surfaces of the same, and two coats best lead and linseed oil on all sash, frames, doors, cornice and other trim: One heavy uniform coat best Metallic and linseed oil paint on the roofs and side walls and exposed columns of all other buildings on the ranch, including the tank, frame, and tank house some distance from the group of buildings. We propose to use only the best white lead and pure linseed and colors, manufactured by W. P. Fuller and Co., laid down on the job in their original containers or packages. We propose to do this work in a good workmanlike manner, to your satisfaction, starting the work when ordered and carrying the same through to an early completion. Trusting we may be awarded this work, and appreciating an early decision on the same, we are,

"Yours very truly,

"CAPITAL COMPRESSED AIR PAINTING CO.,

"By J. V. COONEY.

"J.V.C–G."

This letter or proposal was delivered by the respondent to the appellant at the home of appellant, and at the time this letter or proposal was delivered by the respondent to the appellant, the appellant pointed out six units on the farm upon which he resided, which consisted of his dwelling-house and certain other buildings, and requested respondent to give him an estimate of the cost of those buildings. The

six units were a portion of the fifteen units included in the prices quoted in respondent's letter. The respondent told the appellant that the six units would cost $854.50. To this the appellant replied that the price was all right, and asked respondent when he could get started. The respondent replied, "About the first of the week." The appellant said, "All right, go ahead." Following this, the respondent proceeded to paint the six units belonging to the appellant and mentioned in the conversation to which we have just referred. After giving the buildings referred to as the "six units" one coat of paint, a conversation took place between the appellant and the respondent relative to certain repairs that should be made upon the buildings, such as repairing window screens, gutters, balustrades, posts supporting porches, reglazing, reputtying window sashes, repairing handrails, etc., which should be done before the second coat of paint was applied. The appellant responded that he could not get a carpenter to do the work and asked the respondent to attend to the same. The respondent employed a carpenter and had the necessary repairs on the buildings made prior to applying the second coat of paint. There was some conversation about having the buildings on the Dixon farm painted, but as nothing was done in relation thereto, it is not necessary to lengthen this opinion by any further reference thereto. At the conclusion of making the repairs and painting the six units as herein stated, the appellant paid to the respondent the sum of $500. Thereafter various excuses were made by the appellant that he had changed his mind, that he did not want any further painting done until the following spring, and that he had not had the paint which had been used on the six units analyzed. Following this respondent began suit to collect for the work and labor performed and materials furnished.

The complaint in its charging portion is in the following words and figures: "That the defendant is indebted to the plaintiff in the sum of Five Hundred Eighty Three and 25/100 ($583.25) Dollars, for the balance due on account of materials and labor furnished defendant by plaintiff in painting and repairing the dwelling house, tank house and certain out houses, all occupied by the defendant at his residence, in the County of Yolo, State of California; that all of said materials and labor were furnished, done and per-

formed by the plaintiff for the defendant at his special instance and request within two years next preceding the commencement of this action; that the whole amount and aggregate value of the said materials and labor is One Thousand Eighty-three and 25/100 ($1,083.25) Dollars, no part of which has been paid, except the sum of Five Hundred ($500.00) Dollars, the balance of account first aforesaid still being unpaid.'' It is for this balance that the plaintiff asked for and had judgment.

To this complaint the appellant interposed a general demurrer, which demurrer the record shows was overruled by the consent of the appellant, and time allowed for him within which to answer. The answer contains a general denial and also a counterclaim against the appellant wherein it is set forth that the materials used were of inferior quality, etc., and damages prayed for against the respondent in the sum of $1,083.25. This contention on the part of the appellant appears to have been abandoned at the trial, as no testimony whatever has been called to our attention showing that the work was not done in a good and workmanlike manner, and that the materials were other than of the quality agreed to by the parties.

Upon this appeal the appellant contends that the court erred in admitting in testimony the letter set out in this opinion; that the contract was for an entire sum. While not stated in the specification, the inference would be that the contract was for painting fifteen units for the sum of $1,500, and that the court erred in admitting testimony as to the sum for which the respondent stated he had estimated as the cost and which it would cost to paint the six units which were actually painted. The appellant also raises the point that the contract is an entire one, and that the court erred in admitting the evidence showing that it became a divisible one; likewise, that the court erred in admitting evidence as to custom or practice relative to the use of certain materials. Finally, that the court erred in its instructions to the jury, that some of the instructions were contradictory and misleading.

The record shows that of the $583.25 for which the respondent prays judgment, $228.75 thereof was for work and labor performed in making the necessary repairs upon the buildings referred to as the six units.

In so far as the appellant's objection to the complaint is concerned, it is sufficient to state that as no special demurrer was interposed, and the general demurrer that was interposed was overruled by the consent of the appellant, there is no objection now available to him, save and except that the complaint does not state facts sufficient to constitute a cause of action. A mere reading of the complaint shows that this contention is untenable. The fact that the amount remaining due for painting, and the amount claimed by the respondent for work and labor performed, were not set out in different counts, does not render the pleading insufficient to state a cause of action or in anywise prejudice the rights of the appellant. If the appellant had desired a more specific pleading, he should have demurred specially, and also, if the appellant had desired more information as to the respective items constituting the total sum for which the respondent was asking judgment, he should have called for a bill of particulars. That the pleading is sufficient, see *Donegan* v. *Houston,* 5 Cal. App. 626 [90 Pac. 1073]; *Farwell* v. *Murray,* 104 Cal. 464 [38 Pac. 199]. Section 454 of the Code of Civil Procedure affords full remedy to a party who desires more specific information, and if he fails to take advantage, either by special demurrer or making the demand specified in the section referred to, we fail to see how a party so failing is injured by reason of the general character of a complaint such as appears in this action.

The chief contention of the appellant circles around the admission in testimony of the letter or proposal hereinbefore set forth, and the testimony which showed that after the proposal had been submitted by the respondent to the appellant, the appellant desired to know what it would cost to paint the six units, and the statement by the respondent that it would cost $845.50, and the following testimony showing that the appellant said, all right, he was satisfied with the price and to go ahead with the work. We are stating the testimony in narrative form. Was the writing admissible in evidence? We think so. The testimony shows clearly that the written proposal was never completed. It shows, we think, sufficient to sustain a finding which in this case is necessarily included within the verdict of the jury, that the respondent and appellant both understood and

agreed that the six units should be painted for a specific price. The testimony set out in the record shows that the price of the six units which entered into the proposal submitted by the respondent to the appellant was separately estimated, although in the proposal included in the larger sum of $1,500, which included additional work. We think the conclusion was fairly inferable that the appellant never really intended to have more than the six units painted. But irrespective of these particulars the proposal was admissible in testimony as showing the kind and character of the work to be done and the materials to be used in the performance of the work. And this would be true whether the contract was divisible or indivisible. The proposal sets forth that the respondent was to use only the best white lead and pure linseed oil and colors manufactured by W. P. Fuller & Company, laid down on the job in their original containers or packages. The proposal also sets forth the materials to be used on the walls, roofs, window frames, doors, cornices, etc., and that the work was to be done in a good and workmanlike manner to the satisfaction of the appellant, and that the paint was to be applied by the air-brush method. The respective units were to be given two coats of paint. All of these matters contained in the proposal rendered the proposal admissible in evidence, as we have said, to show the kind of materials to be used, the work to be performed and how it was to be performed. The record shows beyond controversy that the appellant declined to further proceed with the work. It does not appear from the record that the respondent made any objection to the discontinuance of the work, from which the inference necessarily follows that the contract, if it were in the first instance an indivisible contract, had been abandoned by the mutual consent of the parties. Under such circumstances recovery may be had upon a common count. In the case at bar the testimony shows that there was an understanding and agreement between the appellant and the respondent as to the price which should be paid for the painting of the six units, and the testimony shows that this price was agreed to. Whether there was any conflict in the testimony upon this phase of the case is immaterial. None has been called to our attention, but if it were denied by the appellant it would raise only a conflict in the testimony.

The only contention as to the materials used called to our attention is the fact that the respondent, in the performance of the work, used a small quantity of material called "Alpha White." This material contains lead, zinc, and oil, and according to the testimony, is slightly more expensive, or at least just as expensive, as what is called pure lead and oil, and is used for the purpose of making the paint more durable and to give it a better whiteness. There is nothing in the testimony to show that this "Alpha White," used for the purposes stated, was not of a pure quality. Turning to the proposal, we find the following: "We propose to use only the best white lead and pure linseed and colors manufactured by W. P. Fuller & Company, laid down on the job in their original containers or packages." There is sufficient testimony in the record to show that all of the materials were manufactured by W. P. Fuller & Company, were laid down on the job in their original containers, and were of the best quality of materials manufactured by W. P. Fuller & Company. The "colors" mentioned in the proposal are not specified, and in this particular, testimony was admitted to show that Alpha White was used for the purpose, by painters generally, in giving the paint a better whiteness and a more lasting quality. This testimony was admissible under the proposal to show what was understood by the word "colors." That some of the questions asked were not in the proper form may be admitted, but the objection of appellant did not call attention to the phrasing of the questions, his contention being that it could not be shown, by custom of painters, that "Alpha White" should be used. This may be technically true, but it is nevertheless a fact that it can be shown by witnesses competent to testify what is understood by the trade when such words are used. This fact is shown even though the phrasing of the questions were not in all instances technically correct. Section 4½ of article VI of the constitution relative to the improper admission or rejection of evidence is applicable here. The fact which the jury was entitled to know was laid before the jury, and any error of the trial court in overruling objections where the only objection legally tenable was the phrasing of the question, and not as to the facts sought to be elicited, is covered by the provisions of the constitution.

In view of the fact that our attention has not been called to any testimony showing an inferior quality of any of the materials used in the performance of the work by the respondent, the error complained of, if admitted to be error, was not only not prejudicial, but absolutely harmless. In the six grounds assigned as reasons for reversal by appellant, no claim is made that the evidence was insufficient to support the verdict, and if the errors complained of in the admission of testimony did not result in a miscarriage of justice, section 4½ of article VI of the constitution precludes reversal.

■ Appellant finally urges that the court misdirected the jury in matters of law, and that certain of the instructions given by the court were and are contradictory. Particular stress is laid upon the giving of instructions numbered 9 and 10. Instruction number 9 was given at the request of the respondent, and instruction number 10 at the request of the appellant. We have examined all of the instructions other than the two herein referred to by number, and find nothing that requires special attention. Instruction number 9, given at the request of the respondent, is in its wording so nearly identical with the language found in 6 California Jurisprudence, page 417, section 249, that reference to such section is all that is necessary to explain the instruction. Instruction number 10 given at the request of appellant, is in the following words:

"You are instructed that if you find that the plaintiff agreed to do the work and furnish the materials of the kind and quality specified in the letter dated August 14, 1926, and that he failed to do the work and furnish the materials of the kind and quality specified in said contract, then your verdict must be for the defendant. The contract also provides that the work shall be done in a good workmanlike manner to the satisfaction of the defendant Glide, starting the work when ordered and carrying the same through to an early completion. Therefore, unless the plaintiff has established by a preponderance of the testimony that the work was done in a good workmanlike manner to the satisfaction of the defendant Glide, then your verdict must be for the defendant."

As we read instructions numbered 9 and 10, we find nothing "combative or contradictory," as urged by appellant. It does occur to us, however, that instruction number 9

was really unnecessary for the reason that the record in this case does not show any facts or circumstances which would admit of the application of the rule governing the interpretation of contracts where matters of fancy, taste, or sensibility may be involved. In the present case there is another matter which may be considered. The record shows that the appellant was present every day during the progress of the work, saw the different units as they were being completed, and offered no objection whatever to any of the work as it was being carried on. In other words, no objection whatever was made to the work until after it was finally completed and for some time after the sum of $500 had been paid on account thereof. The principal case of *Tiffany* v. *Pacific Sewer Pipe Co.*, 180 Cal. 702 [6 A. L. R. 1493, 182 Pac. 428], relied upon by appellant, points out that in the case then pending before the supreme court the work was executory, and was not an instance where the contract had been completed. All the facts and the circumstances of the case at bar show that no arbitrary refusal to pay for the work by the appellant would be justified in law, and this is especially true in view of the fact that there is no evidence in the record, or at least that none has been called to our attention, which would justify a conclusion that the work was not performed in a good and substantial manner.

The judgment is affirmed.

Finch, P. J., concurred.