[L. A. No. 23974.   In Bank.   Feb. 8, 1957.]

SI COLLINS et al., Appellants v. VICKTER MANOR, INC.
(a Corporation) et al., Respondents.

Frye & Yudelson, Coleman E. Yudelson, Lawrence E. Silverton and Frye, Yudelson & Silverton for Appellants.

Peter T. Rice and Sam Lipson for Respondents.

SCHAUER, J.—Plaintiffs appeal from a judgment of dismissal entered after defendants' demurrer to the second amended complaint was sustained without leave to amend. Plaintiffs, licensed real estate brokers, seek to recover a brokers' commission from defendant corporation and damages from the individual defendants for asserted wrongful interference with the contractual relations between plaintiffs and defendant corporation. We have concluded that under the established rules as to construction of pleadings the complaint states causes of action against both the corporation and the individual defendants, and that the "ambiguities" listed in the special demurrer cannot support the above described order.[1]

Each of the first four counts of the complaint (which plain-

---

[1] On appeal defendants do not discuss the matters raised by special demurrer.

tiffs refer to as separate causes of action) attempts to state substantially the same cause of action against defendant corporation for a brokers' commission of $3,000. The material allegations of these four counts may be summarized as follows:

On or about October 20, 1954, defendant corporation orally employed plaintiffs to procure a purchaser for described real property owned by the corporation and agreed to pay plaintiffs a commission of $3,000 for their services. Plaintiffs obtained a buyer, Grayson, who agreed to pay $65,000 for the property. Grayson and defendant corporation executed a so-called deposit receipt; a copy of the deposit receipt is attached to and made a part of the complaint. The document is signed by plaintiffs as well as the prospective buyer and seller; it recites that plaintiffs received from Grayson a deposit on account of purchase of the described property, on stated terms, "Purchase price to be $61,750.00." At the bottom of the document appears the following:

"We, the undersigned [seller], approve and agree to the foregoing, and agree to pay said broker a real estate commission of $3087.50.

"65000.00 . . . to seller—3000.00 comm.[2]
Vickter Manor, Inc.
Abe Vickter (secy.)
Seller"

"We, the undersigned [buyer], agree to purchase the above described property for the price and terms outlined above.

"Purchaser
Leonard Grayson"

Significant "terms outlined above" in the receipt are (1) "Seller to furnish satisfactory soil compaction report on each bldg site from a reliable testing firm such as D. D. Warren Co." and (2) "Final contour map and filing map subject to buyers' approval." Plaintiffs aver that these "conditions were subsequent to the formation of a valid contract for the sale of the above described real property, but were precedent

---

[2]Although there are patent inconsistencies in the deposit receipt as to the amounts of purchase price and commission, they are to be resolved, for the purpose of testing the decision on demurrer, in accord with the direct averments of the complaint that the contract price was $65,000 and the agreed commission was $3,000. (See *Richards* v. *Farmers' etc. Bank* (1908), 7 Cal.App. 387, 395 [94 P. 393] ["where a pleaded instrument is, because of the uncertainty of the language in which it is expressed, susceptible of more than one construction . . . , the construction of the party pleading it should be accepted [for the purpose of decision on demurrer], if such construction be reasonable"].) Defendants do not claim that the inconsistencies of the figures are grounds for either general or special demurrer.

to the Buyer's duty to pay the purchase price.'' In connection with these terms it is to be noted that the transaction evidenced by the deposit receipt was the proposed sale of unimproved property for the apparently contemplated purpose of subdivision, improvement, and resale.

The complaint further alleges that Grayson, the purchaser procured by plaintiffs, ''was ready, willing and able to purchase the said real property on the terms and conditions imposed by the said Defendant corporation''; that Grayson, by entering into an escrow on October 26, 1954, as contemplated by the deposit receipt,[3] accepted in writing the oral offer to sell made by defendant corporation, and was at all times ''ready, willing and able to complete the purchase'' of the property; that the corporation, however, prevented the buyer's performance ''by failing to deposit the necessary papers in the said escrow; by failing to furnish any soil compaction report; by failing to furnish any contour map or filing map for the buyer's approval; and by giving written notice of withdrawal from said escrow on or about November 19, 1954''; that plaintiffs ''have duly performed all of the conditions of said contract on their part to be performed'' but defendant corporation has refused to pay plaintiffs their earned commission of $3,000, and that the total sum remains unpaid.

Plaintiffs also attempt to state causes of action against defendant Engle (fifth ''cause of action'') and against defendant Vickter (sixth ''cause of action'') for $3,000 damages caused by interference of the respective individual defendants with the contractual relations between plaintiffs and the corporation. These ''causes of action'' repeat the substance of the allegations of the counts against the corporation and add the following averments: Engle, Vickter, and one Lipson were the officers and directors of defendant corporation and ''beneficial owners'' of its property; no stock of the corporation was ever issued. While the above mentioned escrow was still open, Engle and Vickter, with full knowledge of plaintiffs' contract with the corporation, ''wrongfully, intentionally, and without justification,'' prevented

---

[3] The deposit receipt refers several times to an ''escrow,'' and provides that ''this contract shall be considered a part of the escrow and will not be superseded by the escrow without the written consent of the agents herein.''

the corporation from depositing in the escrow "those documents necessary in order to close said escrow." The individual defendants did this to prevent closing of the escrow and to permit the corporation and themselves to profit by a sale to others. Engle, president and managing officer of the corporation, had power, on behalf of the corporation, either to complete the sale or to prevent its completion, and he, joined by Vickter, caused the corporation to send written notice of withdrawal from escrow on or about November 19, 1954.

■ The allegations of the complaint, with the incorporated deposit receipt, sufficiently state the following cause of action against defendant corporation: The corporation employed plaintiffs to procure a purchaser; plaintiffs procured a purchaser ready, able, and willing to buy on terms sufficiently expressed in the deposit receipt; the corporation "approve[d] and agree[d] to" those terms; the deposit receipt appears to satisfy the statute of frauds as a written and signed memorandum of the corporation's agreement to pay plaintiffs $3,000 for their services (Civ. Code, § 1624, par. 5; Code Civ. Proc., § 1973, par. 5); the corporation breached its agreement to pay plaintiffs' commission. ■ The right of the brokers to their commission is not, on the facts here alleged, defeated by the failure of the parties to consummate the transaction. (See *Meyer* v. *Selggio* (1947), 80 Cal.App.2d 161, 164 [4] [181 P.2d 690].)

■ Defendants rely on *Lawrence Block Co.* v. *Palston* (1954), 123 Cal.App.2d 300, 305-306 [266 P.2d 856]. It is there correctly determined that "To entitle a broker to a commission for a sale of real property it must be established that in pursuance of his contract and within the time specified therein, he found a purchaser ready, able, and willing to buy on the terms and conditions specified in the contract of employment, or, if the exact terms are not specified in his contract, upon terms satisfactory and acceptable to his employer." However, defendants assert, the only right of plaintiffs to recover a commission grows out of the written deposit receipt between the buyer and seller, and therefore the following statement in the Block Company case is controlling: "Where the only agreement to pay a broker a commission is contained in the contract between his principal and the customer, the broker's right to compensation is dependent upon performance of that contract." But this statement does not indiscriminately control every three-party

writing signed by the broker, his principal, and the customer. ■ Such a three-party writing may unequivocally specify, or where uncertain may be construed or shown by extrinsic evidence to mean, that the broker has fully performed the duties of his employment and earned his commission by having obtained a buyer ready, able, and willing to proceed with a purchase in accord with those terms of the writing which define the seller's offer—the offer for which the seller employed the broker to produce a qualified acceptor. Where the deposit receipt is subject to such interpretation, recovery of the commission is not prima facie precluded by those decisions which refuse to allow recovery because the broker did not fully perform the terms of his contract. Manifestly a different case is presented if by the terms of the employment contract the broker's right to commission is expressly, or by established implication, made dependent upon the consummation of a contract between his principal and the prospective customer. (See *Lawrence Block Co.* v. *Palston* (1954), *supra,* 123 Cal.App.2d 300; *Frederick* v. *Curtright* (1955), 137 Cal.App.2d 610, 614-615 [290 P.2d 875]; *Ridgway* v. *Chase* (1954), 122 Cal.App.2d 840, 847, 850 [8] [265 P.2d 603]; *Love* v. *Gulyas* (1948), 87 Cal.App.2d 608, 613 [197 P.2d 405].)

Even if we assume that the agreement between plaintiff brokers and defendant corporation can properly be construed to mean that plaintiffs were not to receive their commission until consummation of a final agreement between the corporation and the buyer, the judgment appealed from cannot be affirmed. ■ The order sustaining the general demurrer is untenable because the complaint alleges (and the demurrer admits) facts from which, under the established liberal rules of construction (see Code Civ. Proc., § 452; *Faulkner* v. *California Toll Bridge Authority* (1953), 40 Cal.2d 317, 328 [5] [253 P.2d 659]; *Mix* v. *Yoakum* (1927), 200 Cal. 681, 687 [11] [254 P. 557]), we must infer that plaintiffs and the buyer did everything which the agreement required of them and that consummation was prevented solely by the arbitrary refusal of defendant corporation and its officers to proceed with the transaction. ■ In these circumstances, the defendants will not be allowed to take advantage of their own remissness to defeat plaintiff's recovery. (See *Coulter* v. *Howard* (1927), 203 Cal. 17, 23 [3] [262 P. 751]; *Richardson* v. *Walter Land Co.* (1953), 118 Cal.App.2d 459, 464 [4] [258 P.2d 42].)

Defendants additionally argue that the complaint fails to

state any cause of action because, they say, the deposit receipt is not an enforceable contract between buyer and seller but rather gives the buyer the unilateral right, in his uncontrolled discretion, to refuse to buy if he is not satisfied as to soil compaction report and maps (see provisions of deposit receipt quoted *ante,* p. 878-879). This argument is neither controlling nor correct. As already indicated, plaintiffs' right to a commission is not necessarily dependent upon even the execution of a binding contract of purchase and sale. With particular reference to defendants' argument, the right to a commission is not (on the record here) dependent upon Grayson's being satisfied with the soil compaction report which the corporation agrees to furnish or upon Grayson's approval of the ''contour map and filing map.''

Furthermore, if the provisions as to soil compaction report and maps were contained in an otherwise enforceable contract to buy and sell, those provisions would not make the buyer's obligation illusory; the buyer could not withdraw from the contract at his pleasure. (*Cf. Shortell* v. *Evans-Ferguson Corp.* (1929), 98 Cal.App. 650, 659 et seq. [5, 6] [277 P. 519] ; 12 Cal.Jur.2d 317, § 114.) ■ A contractual provision for performance to the satisfaction of one of the parties ordinarily calls for such performance as would be satisfactory to a reasonable person. (*Thomas Haverty Co.* v. *Jones* (1921), 185 Cal. 285, 296 [7] [197 P. 105].) If acceptance or rejection of the soil compaction report and maps were dependent on the buyer's uncontrolled caprice, then he would be the sole judge of his own satisfaction and could withdraw from the contract without regard to the reasonableness of his decision. (*Tiffany* v. *Pacific Sewer Pipe Co.* (1919), 180 Cal. 700, 702-704 [182 P. 428, 6 A.L.R. 1493].) ■ But where the question is whether an agreed performance will satisfy a requirement of commercial value or quality, operative fitness or mechanical ability, the party to whom such performance is tendered is not justified in claiming arbitrarily, unreasonably, or capriciously that he is not satisfied, in order to evade liability. (*Thomas Haverty Co.* v. *Jones* (1921), *supra,* 185 Cal. 285, 296 [7] ; *Tiffany* v. *Pacific Sewer Pipe Co.* (1919), *supra,* 180 Cal. 700, 702-704 [1] ; *Melton* v. *Story* (1931), 113 Cal.App. 609, 613 [298 P. 1032].) ■ A standard for the soil compaction report is stated in the deposit receipt (a report ''from a reliable testing firm such as D. D. Warren Co.''), and from the receipt as a whole it could be determined that the report and maps should

meet reasonable standards for the commercial purpose of subdivision. In these circumstances, the buyer could not evade liability by mere arbitrary rejection of the report and maps.

As hereinabove stated, counts five and six undertake to plead causes of action against the individual defendants Engle and Vickter for the tort described (in *Speegle* v. *Board of Fire Underwriters* (1946), 29 Cal.2d 34, 39 [2] [172 P.2d 867]) as "Intentional and unjustifiable interference with contractual relations." ■ It is established that one who, without legal justification, intentionally induces a third person not to perform a contract with another, is liable to the other for the ensuing damage. (*Imperial Ice Co.* v. *Rossier* (1941), 18 Cal.2d 33, 35 [1] [112 P.2d 631].)

■ Plaintiffs have alleged the existence of a valid contract and an intentional unjustified interference with it by the individual defendants which caused defendant corporation to breach such contract to plaintiffs' damage Whether or not Engle and Vickter were privileged to cause the corporation to discontinue its relations with plaintiffs, in the belief that such a course of action was in the best interests of the corporation, is a matter of defense, to be decided by a resolution of the factual issues presumptively involved. Their right, if any, to such privilege, does not affirmatively appear on the face of the complaint.

For the reasons above stated, the judgment is reversed and the cause remanded with directions to overrule the general demurrer and entertain further proceedings not inconsistent with the views hereinabove expressed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Spence, J., and McComb, J., concurred.